Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert, Esq. (SBN 11728)
FENNEMORE CRAIG, P.C.
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel: 775-788-2228  Fax: 775-788-2229
lhart@fclaw.com; jtennert@fclaw.com

*Attorneys for Plaintiffs Federal Housing
Finance Agency and Federal Home Loan
Mortgage Corporation*

Amy F. Sorenson, Esq. (SBN 12495)
Kelly H. Dove, Esq. (SBN 10569)
Erica Stutman, Esq. (SBN 10794)
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Tel:  702-784-5200  Fax:  702-784-5252
asorenson@swlaw.com; kdove@swlaw.com;
estutman@swlaw.com

*Attorneys for Plaintiffs Federal National
Mortgage Association*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, in its capacity as Conservator of Federal National Mortgage Association and Federal Home Loan Mortgage Corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION; and FEDERAL HOME LOAN MORTGAGE CORPORATION, <br><br>        Plaintiffs, <br><br>    v. <br><br> SATICOY BAY, LLC, <br><br>        Defendant. | CASE NO.: 2:16-cv-02242-JAD-BNW <br><br><br> **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

This case involves a fact pattern and central legal issue already familiar to this Court: Defendant Saticoy Bay, LLC, the purchaser of 33 properties (the "Properties") sold at homeowners' association foreclosure sales (the "HOA Sales"), contends that the HOA Sales extinguished any preexisting lien interests under NRS 116.3116 ("State Foreclosure Statute"), which allows properly conducted HOA foreclosure sales to extinguish all junior interests. Saticoy Bay contends that it therefore took free-and-clear title to each Property at issue.

But a federal statute precludes that outcome here. Specifically, 12 U.S.C. § 4617(j)(3) (the "Federal Foreclosure Bar") protects the Federal National Mortgage Association's ("Fannie Mae's") and the Federal Home Loan Mortgage Corporation's ("Freddie Mac's") (together, the "Enterprises'") property interests from extinguishment through foreclosure while the Enterprises are under the Federal Housing Finance Agency's ("FHFA's") conservatorship, unless FHFA affirmatively consents to the extinguishment of those interests. The Federal Foreclosure Bar preempts the State Foreclosure Statute to the extent it would otherwise permit an HOA to foreclose on an Enterprise-owned lien; under the Supremacy Clause, the state law must yield. Because an Enterprise owned a first deed of trust corresponding to each of the Properties at the time of the relevant HOA Sale, and FHFA did not provide consent, any purported interests Saticoy Bay has in the Properties are subject to the interests of the Enterprises and FHFA, in its capacity as the Enterprises' Conservator.

The law supporting the application of the Federal Foreclosure Bar in this case is by now well established. Courts in this District, including this Court, have granted several similar motions for summary judgment to Plaintiffs and loan servicers involving the same legal issues, and the Ninth Circuit has upheld each of those decisions that have been appealed. *See, e.g.*, *Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017); *FHFA v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1146-47 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1618 (Apr. 29, 2019); *Nationstar Mortg., LLC v. Eldorado Neighborhood Second Homeowners Ass'n*, No. 2:15-cv-0064-JAD-BNW, 2019 WL 4120797 (D. Nev. Aug. 29, 2019).

Plaintiffs respectfully request that the Court grant their motion for summary judgment.

## BACKGROUND

### I.      The Secondary Mortgage Market

Congress chartered the Enterprises to facilitate the nationwide secondary mortgage market, and thereby to enhance the equitable distribution of mortgage credit throughout the nation. *See City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1114 (9th Cir. 2014). Congress has confirmed that "the continued ability of [the Enterprises] to accomplish their public missions is important to providing housing in the United States and the health of the Nation's economy." 12 U.S.C. § 4501. The Enterprises' federal statutory charters authorize them to purchase and deal only in secured "mortgages," not unsecured loans. *See* 12 U.S.C. §§ 1451(d), 1454, 1717(b), 1719; *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 557 (2017); *FHFA v. Nomura Holding Am., Inc.*, 873 F.3d 85, 105 (2d Cir. 2017); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 599-600 (D.C. Cir. 2017).

The Enterprises have purchased millions of mortgages nationwide, including hundreds of thousands in Nevada. *See Town of Babylon v. FHFA*, 699 F.3d 221, 225 (2d Cir. 2012). Although the Enterprises own a large number of mortgage loans through their purchases on the secondary market, they are not in the business of managing the mortgages themselves, such as handling day-to-day borrower communications. Rather, like other loan investors, the Enterprises contract with servicers to act on their behalf, and these servicers often are assigned deeds of trust as record beneficiary to facilitate their efficient management of those loans. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038-39 (9th Cir. 2011) (describing how loan owners contract with servicers and the servicers' role); Restatement (Third) of Prop.: Mortgages § 5.4 cmt. c ("Restatement") (discussing the common practice where investors in the secondary mortgage market designate their servicer to be assignee of the mortgage); Fannie Mae's Single-Family Servicing Guide at A1-1-03, F-1-13 (discussing Fannie Mae's relationship with servicers to manage the loans Fannie Mae purchases); Freddie Mac's Single-Family Seller/Servicer Guide

2

1   at 1101.2(a) (similar).[1]

2        The Enterprises and their servicers also work with Mortgage Electronic Registration

3   Systems, Inc. ("MERS").  The Ninth Circuit has noted that while "MERS, as the 'nominee' of

4   the lender and of any assignee of the lender, is designated . . . as the 'beneficiary' . . . under the

5   deed of trust," a "lender *owns* the home loan borrower's . . . promissory note." *In re Mortg.*

6   *Elec. Registration Sys., Inc.*, 754 F.3d 772, 776 (9th Cir. 2014) (emphasis added).  The "obvious

7   advantage" of the system is that "it allows residential lenders to avoid the bother and expense of

8   recording every change of *ownership* of promissory notes." *Id.* at 776-77 (emphasis added).  The

9   true owner of the loan is the lender, its successor, or its assignee—not MERS.  *See Cervantes*,

10  656 F.3d at 1039.  Similarly, the Nevada Supreme Court has recognized the importance of these

11  relationships by adopting the Restatement approach.  *See In re Montierth*, 131 Nev. Adv. Op. 55,

12  354 P.3d 648, 650-51 (2015).  *Montierth* holds that when a loan owner has an agent or

13  contractual relationship with an entity who acts as the beneficiary of record of a deed of trust, the

14  loan owner (though not the recorded beneficiary) maintains a secured property interest.  *Id.*

15  Thus, while MERS may be beneficiary of record of a deed of trust, this does not deprive the

16  associated loan owner from having a secured property interest in the collateral.  *See id.*

17

18

---

19  [1]    In addition to being authenticated by and attached to the declarations of Fannie Mae and
    Freddie Mac employees, the Guides are publicly available on the Enterprises' websites.  The

20  Fannie Mae Guide is publicly available on Fannie Mae's website.  An interactive version is
    available at https://www.fanniemae.com/content/guide/servicing/index.html, and archived prior

21  versions of the Fannie Mae Guide are available at that URL by clicking "Show All" in the left-
    hand column of that site.  A static, PDF copy of the most recent version of the Fannie Mae Guide

22  is available at https://www.fanniemae.com/content/guide/svc121119.pdf.  The Freddie Mac
    Guide is also publicly available on Freddie Mac's website.  An interactive version is available at

23  https://guide.freddiemac.com/app/guide/, and archived prior versions of the Freddie Mac Guide
    are available at https://sf.freddiemac.com/faqs/historical-guide-snapshot-pdfs.  A static, PDF

24  copy of the most recent version of the Freddie Mac Guide is available at
    https://www.allregs.com/tpl/Home.  While some sections of the Guides have been amended over

25  the course of the Enterprises' ownership of the Loans, none of the amendments have materially
    changed the relevant sections.  The Guide sections that were in effect at the time of each HOA

26  Sale are appended to the Fannie Mae and Freddie Mac Declarations, attached as Exhibits C and
    D.  Even if the Guides were not introduced by declaration testimony, the Court could take

27  judicial notice of the Guides.  *See, e.g.*, *Berezovsky*, 869 F.3d at 932, n.9 (taking judicial notice
    of Freddie Mac's servicing guide).

28

## II.      FHFA and the Enterprises in Conservatorship

In July 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 et seq.), which established FHFA as an independent federal agency with regulatory and oversight authority over the Enterprises and the Federal Home Loan Banks.  In September 2008, FHFA placed the Enterprises into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs."  12 U.S.C. § 4617(a)(2).  Congress authorized the Conservator "to undertake extraordinary economic measures" out of a concern that "a default by Fannie and Freddie would imperil the already fragile national economy."  *Perry*, 864 F.3d at 599.  Accordingly, Congress granted FHFA an array of powers, privileges, and exemptions from otherwise applicable laws when acting as Conservator.  Among these is a section providing that "[n]o property" of FHFA conservatorships "shall be subject to . . . foreclosure . . . without the consent of [FHFA]."  12 U.S.C. § 4617(j)(3).  Fannie Mae and Freddie Mac remain in FHFA conservatorships today.

## III.     Undisputed Facts Specific to This Case

### A.      Facts Applicable to All Properties

The relevant history of each of the 33 Properties follows the same basic fact pattern:

1.    A borrower procures a loan secured by a residential property, evidenced by a promissory note and a deed of trust listing the borrower, the lender, and a beneficiary.  (Each note and deed of trust will be referred to together as the "Loan.").

2.    The deed of trust is recorded in the property records of the corresponding county.

3.    The original lender or its successor sells the Loan to one of the Enterprises.  Under Nevada law, that Enterprise thereby acquires ownership of the note and deed of trust, giving the Enterprise a property interest in the collateral real estate.

4.    On September 6, 2008, FHFA's Director exercises his authority under HERA to place the Enterprises into conservatorships.

5.    An HOA forecloses on a superpriority lien imposed on the property by the HOA under NRS 116.3116 because the borrower or its successor has purportedly failed to pay past-due HOA assessments.

6.    At the time of the HOA Sales, one of three entities was listed as the beneficiary of record of the associated deed of trust: (a) the Enterprise, (b) the Enterprise's contractually authorized servicer; or (c) MERS, as nominee for the lender and its successor or assigns. Under each scenario, the Enterprise owns the applicable Loan and, as a secured creditor, maintains its property interest in the collateral real estate.

7.    At no time did the Conservator consent to the HOA Sales extinguishing or foreclosing the Enterprises' interests in the deeds of trust encumbering the Properties.  Ex. A (FHFA's Statement on HOA Super-Priority Lien Foreclosures (Apr. 21, 2015)).

8.    In addition to the facts described above that are applicable to every property, specific undisputed facts relating to each Property are described below and in Charts 1-4 of Exhibit B.[2]

**B.    Facts Applicable to the Property for Which an Enterprise Was the Record Deed-of-Trust Beneficiary at the Time of the HOA Sale**

9.    For one of the Properties (1915 Winter Hill Street), Fannie Mae was the beneficiary of record of the deed of trust at the time of the HOA Sale.

10.    In addition to the facts described above that are applicable to every property, the specific, undisputed facts relating to this property are summarized from the Fannie Mae employee declaration and business records in Chart 1, attached to this Motion.  Ex. B.  These relevant facts include: (1) the Property address; (2) the date the deed of trust was recorded; (3) the date Fannie Mae purchased the Loan; (4) the date of the relevant HOA Sale; and (5) the deed-of-trust beneficiary at the time of the HOA Sale.  Chart 1 also provides citations to the portions of the Fannie Mae employee declaration and business records that support each fact, in addition to citations to the relevant publicly recorded documents.

---

[2]    The Complaint sought relief concerning 37 properties and associated Enterprise liens. *See* Compl. ¶ 26.  Plaintiffs are no longer pursuing relief from this Court concerning the liens encumbering four of those properties:  2643 Red Rock Street, 3239 Morning Springs Drive, 5236 Adorato Drive, and 2714 Snapdragon Court.  If the Court believes it is necessary, Plaintiffs would consent to an order dismissing their claims, solely as they pertain to those four properties.

11.    As set forth in Chart 1, Fannie Mae purchased the Loan secured by the Winter Hill Property prior to the HOA Sale.  At the time of the HOA Sale, Fannie Mae continued to own the Loan and served as record beneficiary of the Deed of Trust.

**C.    Facts Applicable to the Properties Where an Enterprise's Servicer Was Record Deed-of-Trust Beneficiary at the Time of the HOA Sales**

**1.    The Servicing Guides**

12.    The relationship between the servicers of the Loans and the Enterprises, as owners of the Loans, are governed by Fannie Mae's Single-Family Servicing and Selling Guides and Freddie Mac's Single-Family Seller/Servicer Guide, documents central to the Enterprises' relationship with servicers nationwide.  Among other things, the Guides provide that the Enterprises' servicers may act as record beneficiaries for the deeds of trust the Enterprises own, and require that servicers assign those deeds of trust to the Enterprises upon the Enterprises' demand.  *See* Ex. C, Decl. of Felicia Miller ("Miller Decl.") at Ex. E , pp. Fannie 000001-4; 000050-58; (Fannie Mae Selling Guide at A2-1-01, Fannie Mae Servicing Guide F-1-11); Ex. D, Decl. of  Dean Meyer ("Meyer Decl.") at Ex. 1, pp. 38-42 (Freddie Mac Guide at 1101.2(a)).

**(a)    Fannie Mae's Guide**

13.    The Fannie Mae Single-Family Selling and Servicing Guides ("Fannie Mae Guides") serve as central documents governing the contractual relationship between Fannie Mae and its servicers nationwide.  Ex. C of Miller Decl. at 3 ¶ 7; *see also* Ex. E attached to Miller Decl., pp.  Fannie000001-4 (Section A2-1-01).

14.    Specifically, the Fannie Mae Guides provide that:

> The servicer ordinarily appears in the land records as the mortgagee to facilitate performance of the servicer's contractual responsibilities, including, but not limited to, the receipt of legal notices that may impact Fannie Mae's lien, such as notices of foreclosure, tax, and other liens.  However, *Fannie Mae may take any and all action with respect to the mortgage loan it deems necessary to protect its . . . ownership of the mortgage loan, including recordation of a mortgage assignment, or its legal equivalent, from the servicer to Fannie Mae or its designee.*  In the event that Fannie Mae determines it necessary to record such an instrument, the servicer must assist Fannie Mae by

6

- preparing and recording any required documentation, such as mortgage assignments, powers of attorney, or affidavits; and

- providing recordation information for the affected mortgage loans.

Ex. C, Miller Decl. at Ex. E, p. Fannie 00024 (Section A2-1-03) (emphasis added).

15.     The Fannie Mae Guides also provide for a temporary transfer of possession of the note when necessary for servicing activities:

> In order to ensure that a servicer is able to perform the services and duties incident to the servicing of the mortgage loan, Fannie Mae temporarily gives the servicer possession of the mortgage note whenever the servicer, acting in its own name, represents the interests of Fannie Mae in foreclosure actions, bankruptcy cases, probate proceedings, or other legal proceedings.

> This temporary transfer of possession occurs automatically and immediately upon the commencement of the servicer's representation, in its name, of Fannie Mae's interests in the foreclosure, bankruptcy, probate, or other legal proceeding.

Ex. C, Miller Decl. at Ex. E, p. Fannie000026 (Section A2-1-04).

16.     The Fannie Mae Guides include a chapter regarding how and when servicers should pursue foreclosure.  *See generally* Ex. C, Miller Decl. at Ex. E, pp. Fannie000042-49 (Chapter E-3).  The chapter includes detailed provisions for how servicers may foreclose on properties when either Fannie Mae, MERS, or the servicer itself is the beneficiary of record of the relevant deed of trust.  *See id.* at Fannie000045-46 (Section E-3.2-09).

17.     Nevertheless, "Fannie Mae is at all times the owner of the mortgage note," and "[a]t the conclusion of the servicer's representation of Fannie Mae's interests in the foreclosure . . . possession automatically reverts to Fannie Mae."  Ex. C, Miller Decl. at Ex. E, pp. Fannie000026-27 (Section A2-1-04).

18.     The Fannie Mae Guides also include a chapter describing how servicers should manage litigation on behalf of Fannie Mae.  *See generally* Ex. C, Miller Decl. at Ex. E, pp. Fannie000037-41 (Chapter E-1).

19.     Under the Fannie Mae Guides, a servicer is required to "maintain in the individual mortgage loan file all documents and system records that preserve Fannie Mae's

7

ownership interest in the mortgage loan."  Ex. C, Miller Decl. at Ex. E, p. Fannie000029 (Section A2-4-01).

20.  Finally, any servicer retaining documents related to a particular loan, such as a deed of trust, has "no right to possess these documents and records except under the conditions specified by Fannie Mae."  Ex. C, Miller Decl. at Ex. E, p.Fannie000010 (Section A2-5.1-02).

**(b)    Freddie Mac's Guide**

21.  Freddie Mac's Single-Family Seller/Servicer Guide ("Freddie Mac Guide") serves as a central governing document for Freddie Mac's relationship with servicers nationwide. *See* Ex. D, Meyer Decl. at Ex. 1, pp. 38-42 (Section 1101.2).

22.  Specifically, the Freddie Mac Guide provides that:

> For each Mortgage purchased by Freddie Mac, the Seller and the Servicer agree that Freddie Mac may, at any time and without limitation, require the Seller or the Servicer, at the Seller's or the Servicer's expense, to make such endorsements to and assignments and recordations of any of the Mortgage documents so as to reflect the interests of Freddie Mac.

Ex. D, Meyer Decl. at Ex. 1, p. 44 (Section 1301.10).

23.  The Freddie Mac Guide also provides that:

> The Seller/Servicer is not required to prepare an assignment of the Security Instrument to Freddie Mac. However, *Freddie Mac may, at its sole discretion and at any time, require a Seller/Servicer, at the Seller/Servicer's expense, to prepare, execute and/or record assignments of the Security Instrument to Freddie Mac.*

Ex. D, Meyer Decl. at Ex. 1, pp. 46-47 (Section 6301.6) (emphasis added).

24.  The Freddie Mac Guide authorizes servicers to foreclose on the Deed of Trust on behalf of Freddie Mac.  *See, e.g.*, Ex. D, Meyer Decl. at Ex. 1, at pp. 50, 55, 57-58 (Sections 8105.3, 9301.1, 9301.12, 9401.1).

25.  Accordingly, the Freddie Mac Guide also provides for a temporary transfer of possession of the note when necessary for servicing, including foreclosure.  *See* Ex. D, Meyer Decl. at Ex. 1, pp. 51-52, 53-54, 56 (Sections 8107.1, 8107.2, 9301.11).  However, when in "physical or constructive possession of a Note," the Servicer must "follow prudent

8

business practices" to ensure that the note is "identif[ied] as a Freddie Mac asset." *Id.* at pp. 51-52 (Section 8107.1(b)). Furthermore, when transferring documents in a mortgage file, including a note, the servicer must ensure the receiver acknowledges that the note is "Freddie Mac's property." *Id.* at p. 45 (Section 3302.5).

26. The Freddie Mac Guide also includes chapters regarding how and when servicers should appear as parties to litigation involving Freddie Mac loans. *See* Ex. D, Meyer Decl. at Ex. 1, pp. 59, 61-82 (Sections 9402.2, 9501).

27. The Freddie Mac Guide provides that:

> All documents in the Mortgage file, . . . and all other documents and records related to the Mortgage of whatever kind or description . . . will be, and will remain at all times, the property of Freddie Mac. All of these records and Mortgage data in the possession of the Servicer are retained by the Servicer in a custodial capacity only.

Ex. D, Meyer Decl. at Ex. 1, p. 43 (Section 1201.9).

28. The Freddie Mac Guide provides that a transferee servicer undertakes all responsibilities under the Freddie Mac Guide and that a transfer of servicing does not release the transferor servicer of its obligations under the Freddie Mac Guide. *See* Ex. D, Meyer Decl. at Ex. 1, p. 49 (Section 7101.15(c)).

## 2. The Properties

29. For 29 of the 33 Properties, an Enterprise's servicer was the beneficiary of record of the deed of trust at the time of the HOA Sale.

30. In addition to (1) the facts described above that are applicable to every Property, and (2) the facts applicable to every Property where the servicer was the beneficiary of record at the time of the HOA Sale, the specific, undisputed facts relating to each Property are summarized from the Enterprise declarations and business records in Chart 2 (for Fannie Mae) and Chart 4 (for Freddie Mac) of Exhibit B, attached to this Motion. These relevant facts include: (1) the Property address; (2) the date the deed of trust was recorded; (3) the date the Enterprise purchased the Loan; (4) the date of the relevant HOA Sale; (5) the deed-of-trust beneficiary at the time of the HOA Sale; and (6) the servicer of the Loan at

the time of the HOA Sale.  These charts provide citations to the portions of the employee declarations and business records that support each fact, in addition to citations to the relevant publicly recorded documents.

31.  As shown by these charts, for each of these Properties, an Enterprise purchased the Loan prior to the HOA Sale and maintained ownership of that secured property interest at the time of the HOA Sale, while its servicer of the relevant Loan was listed as beneficiary of record of the deed of trust.

32.  With respect to the Mount Noble Property, servicing of the associated Loan was transferred from the servicer who also appeared as the Deed of Trust's beneficiary-of-record (MetLife Home Loans) to a new servicer (Nationstar Mortgage, LLC) before the HOA Sale, but an assignment of the deed of trust from MetLife to Nationstar was not executed or recorded until after the HOA Sale was completed.  As explained above, MetLife, the transferor servicer, was not released from its obligations under the Guide to protect the Loan and comply with Freddie Mac's directives regarding the Loan even after it transferred its servicing rights.  *See* Ex. 1 of Meyer Decl. at p. 49 (Section 7101.15(a) ("The Transferee Servicer's assumption of [servicing responsibilities and liabilities] . . . does not release the Transferor Servicer . . . of their duties, obligations, representations, covenants, warranties, agreements and related liabilities with respect to the Mortgage[].").  Thus, at the time of the HOA Sale, MetLife maintained a contractual relationship with Freddie Mac that preserved Freddie Mac's property interest under Nevada law.

**D.      Facts Applicable to the Properties Where MERS Was the Record Deed-of-Trust Beneficiary at the Time of the HOA Sales**

**1.      MERS**

33.  While MERS is beneficiary of record, it does not own the loan and acts solely as nominee for the lender and the lender's successors and assigns, including the Enterprises.  *See* Ex. C, Miller Decl. ¶ 8, Ex. E at Fannie000017 (Fannie Mae Guide at A2-8-01) (MERS will

have no beneficial interest in the mortgage loan, even if it is named as the nominee for

the beneficiary in the security instrument.)).

34. This arrangement is reflected in the MERS System Rules of Membership:

> Mortgage Electronic Registration Systems, Inc. ("MERS") is . . . created for the purpose of serving as the Mortgagee of Record in the applicable public land records solely as Nominee for the Note Owner and the Note Owner's successors and assigns, including the Note Holder. MERS shall have no rights whatsoever to retain any payments made on account of a MERS Loan, to any servicing rights related to MERS Loans, or to retain any mortgaged properties securing MERS Loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to MERS Loans or mortgaged properties.

Ex. I at p. ii (MERS System Rules of Membership, Introduction, version available at

https://www.mersinc.org/publicdocs/MERS_System_Rules_of_Membership.pdf).

35. The Rules also provide that:

> MERS shall act as Nominee of the Note Owner and the Note Owner's successors and/or assigns, including the Note Holder with respect to each MERS Loan that a Member registers on the MERS® System. In the absence of contrary instructions from the Note Owner . . . MERS may rely on instructions from the Servicer . . . in accordance with these Rules and Procedures with respect to transfers of legal title of the Note or mortgage, transfers of contractual servicing rights, and releases of any security interests applicable to such mortgage loan. The Note Owner may give instructions that are contrary to those provided by the Servicer . . . that shall supersede all previous instructions by [the Servicer].

*Id.* at pp. 9-11 (Rule 2, Section 5).

### 2.    The Properties

36. For three of the 33 Properties, MERS was the beneficiary of record of the deed of trust at

the time of the HOA Sale.

37. In addition to (1) the facts described above that are applicable to every property, and

(2) the facts applicable to every property where MERS was the beneficiary of record at

the time of the HOA Sale, the specific, undisputed facts relating to each Property are

summarized from the Fannie Mae declaration and business records in Chart 3 of Ex. B,

attached to this Motion. The relevant facts include: (1) the Property address; (2) the date

the deed of trust was recorded; (3) the date Fannie Mae purchased the Loan; (4) the date

1    of the relevant HOA Sale; and (5) the deed-of-trust beneficiary at the time of the HOA

2    Sale.  Chart 3 provide citations to the portions of the Fannie Mae employee declarations

3    and business records that support each fact, in addition to citations to the relevant

4    publicly recorded documents.

5    38.    As shown by Chart 3, for each of these Properties, Fannie Mae purchased the Loan prior

6    to the HOA Sale and maintained ownership of that secured property interest at the time of

7    the HOA Sale, while MERS, in its nominee capacity, was listed as beneficiary of record

8    of the deed of trust.

9    ## REQUEST FOR JUDICIAL NOTICE

10   Some of the preceding facts are supported by judicially noticeable information that is

11   either "generally known" or that "can be accurately and readily determined from sources whose

12   accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Plaintiffs respectfully request

13   that the Court take judicial notice of two categories of documents and one fact.

14   *First*, Plaintiffs respectfully request that the Court take judicial notice of the publicly

15   recorded documents cited in the statement of undisputed facts and the underlying charts.  Facts

16   derived from the publicly available records of the county recorders' offices are judicially

17   noticeable.  *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 &

18   n.1 (9th Cir. 2004) (court may take judicial notice of the records of state agencies and other

19   undisputed matters of public record under Fed. R. Evid. 201); *Eldorado*, 2019 WL 4120797, at

20   *1 n.6 (taking judicial notice of property records in related case).

21   *Second*, the Court should take judicial notice of the FHFA Statement regarding its policy

22   not to consent to the extinguishment of the Enterprises' property interest.  FHFA's statement is

23   available on a federal government website that is not subject to reasonable dispute.  *See, e.g.*,

24   *FHFA v. Thunder Props., Inc.*, No. 3:16-cv-00461-RCJ-WGC, 2019 WL 6700198, *4 (D. Nev.

25   Dec. 6, 2019) (taking judicial notice of FHFA's statement); *Nationstar Mortg. LLC v. Stonefield*

26   *Homeowners Ass'n*, No: 3:17-cv-00627-MMD-WGC, 2019 WL 2062952, at *1 n.2 (D. Nev.

27   May 9, 2019) (same); *Nationstar Mortg. LLC v. E. Trop 2073 Tr.*, No. 2:17-cv-01769-MMD-

28

1     CWH, 2019 WL 469897, at *1, n.3 (D. Nev. Feb. 6, 2019) (same).

2         *Finally*, Plaintiffs respectfully request that the Court take judicial notice of the fact that

3 the Enterprises were placed under FHFA's conservatorship in 2008 and have been in

4 conservatorship ever since.  This fact is subject to judicial notice under Federal Rule of Evidence

5 201(b), as it is a matter of common knowledge and readily determined from sources whose

6 accuracy cannot reasonably be questioned.  *See Eldorado*, 2019 WL 4120797, at *1 n.1 (taking

7 judicial notice of conservatorship); FHFA, History of Fannie Mae & Freddie Mac

8 Conservatorships, http://www.fhfa.gov/Conservatorship.

9                                 **LEGAL STANDARD**

10         In evaluating a motion for summary judgment, courts must view all facts and draw all

11 inferences in the light most favorable to the nonmoving party.  *See Amerson v. Clark Cty.*, 995 F.

12 Supp. 2d 1155, 1159 (D. Nev. 2014).  Summary judgment shall be granted if the moving party

13 demonstrates that the pleadings, depositions, answers to interrogatories, and admissions on file,

14 together with affidavits, if any, show that there is no genuine issue as to any material fact and the

15 moving party is entitled to judgment as a matter of law.  *See Zoslow v. MCA Distrib. Corp.*, 693

16 F.2d 870, 883 (9th Cir. 1982).[3]

17                                  **ARGUMENT**

18         The law is settled:  The Federal Foreclosure Bar preempts the State Foreclosure Statute,

19 which would otherwise permit an HOA's foreclosure of its superpriority lien to extinguish an

20 Enterprise's deed of trust.  Accordingly, the Ninth Circuit has affirmed nine decisions granting

21 summary judgment to Plaintiffs and their servicers and confirming that the Federal Foreclosure

22 Bar protects Enterprise property interests from extinguishment in Nevada HOA foreclosure sales

23 while the Enterprises are in conservatorship.  *See Berezovsky*, 869 F.3d 923; *FHFA v. SFR*, 893

24 F.3d 1136; *Ditech Fin., LLC v. SFR Invs. Pool 1, LLC*, --- F. App'x ---, 2019 WL 6242262 (9th

25 Cir. Nov. 21, 2019); *Fannie Mae v. KK Real Estate Invs. Fund, LLC*, 772 F. App'x 552 (9th Cir.

---

[3]     The Declaration in Support of Plaintiffs' Motion for Summary Judgment, Ex. J, describes all meet-and-confer efforts undertaken pursuant to this Court's May 30, 2019 Order (ECF No. 19) and Local Rule IA 1-3(f)(2).

1   2019); *Williston Inv. Grp., LLC v. JPMorgan Chase Bank, NA*, 736 F. App'x 168, 169 (9th Cir.

2   2018); *Elmer v. JPMorgan Chase & Co.*, 707 F. App'x 426 (9th Cir. 2017); *G&P Invs. Enters.,*

3   *LLC v. Barney*, 740 F. App'x 563, 564 (9th Cir. 2018); *JPMorgan Chase Bank, NA v. Las Vegas*

4   *Dev. Grp.*, 740 F. App'x 153, 154 (9th Cir. 2018); *Saticoy Bay, LLC, Series 2714 Snapdragon v.*

5   *Flagstar Bank, FSB*, 699 F. App'x 658 (9th Cir. 2017).  The Nevada Supreme Court has ruled in

6   favor of Plaintiffs and their servicers on the same issues based on a materially similar evidentiary

7   record.  *See Daisy Tr. v. Wells Fargo Bank, N.A.*, 445 P.3d 846 (Nev. 2019); *Saticoy Bay LLC*

8   *Series 9641 Christine View v. Fannie Mae*, 417 P.3d 363 (Nev. 2018).

9        Moreover, courts in this District have granted summary judgment to Plaintiffs in cases,

10   like this one, involving multiple properties owned by one purchaser.  The first was *FHFA v. SFR*,

11   in which the Ninth Circuit affirmed a grant of summary judgment to FHFA and the Enterprises

12   concerning five properties.  893 F.3d 1136.  In the second, Judge Navarro granted summary

13   judgment to FHFA and the Enterprises regarding 83 properties.  *See FHFA v. SFR Invs. Pool 1,*

14   *LLC*, 380 F. Supp. 3d. 1089, (D. Nev. 2019), *appeal pending*, No. 19-15910 (9th Cir. 2019).  In

15   the third and most recent case, Judge Jones granted summary judgment to FHFA and the

16   Enterprises regarding 13 properties.  *Thunder Props.*, 2019 WL 6700198.

17        This Court has granted summary judgment to Plaintiffs and/or their servicers in similar

18   cases involving only one property.  *See, e.g.*, *Bayview Loan Servicing, LLC v. Shadow Springs*

19   *Cmty. Ass'n*, No. 2:16-cv-02677-JAD-DJA, 2019 WL 6219525, at *6 (D. Nev. Nov. 21, 2019);

20   *Eldorado*, 2019 WL 4120797, at *6; *Ocwen Loan Servicing, LLC v. SFR Invs. Pool 1, LLC*, No.

21   2:17-cv-1757-JAD-VCF, 2019 WL 4016203, at *6 (D. Nev. Aug. 26, 2019); *Ditech Fin. LLC v.*

22   *Res. Grp., LLC*, No. 2:17-cv-1823-JAD-CWH, 2019 WL 2527559, at *4 (D. Nev. June 19,

23   2019).  The legal principles are well established by this prior authority.  Accordingly, there are

24   only two remaining issues for the Court to decide here.

25        *First*, the Court must determine whether an Enterprise owned each Loan at the time of the

26   relevant HOA Sales.  Plaintiffs' evidence establishes the Enterprises' property interests, and

27   there is no contrary evidence.  In each of the cases mentioned above, the court evaluated

28

evidence materially similar to that in the record here—business records and declaration testimony of Enterprise employees—and found the evidence sufficient to establish that the Enterprise had a protected property interest for purposes of summary judgment. *See, e.g.*, *Berezovsky*, 869 F.3d at 930-31; *Elmer*, 707 F. App'x at 428.

*Second*, the Court must evaluate whether FHFA consented to extinguish the Enterprises' interests in the Deeds of Trust. Saticoy Bay cannot show that FHFA consented to the extinguishment of any of the Loans at issue here; to the contrary, FHFA has stated that it has never given such consent. *See* Ex. A.

This Court should follow its prior decisions and Ninth Circuit precedent to hold that the Federal Foreclosure Bar protected the Enterprises' property interests from extinguishment.

I.   **The Enterprises Maintained a Property Interest in Each Property at the Time of the Relevant HOA Sale**

A.   **Undisputed Evidence Establishes the Enterprises' Loan Ownership**

The Ninth Circuit's controlling decisions confirm that an Enterprise's property interest may be established by an Enterprise's business records and a declaration from an Enterprise employee explaining that the records show when the Enterprise owned the Loan and the identity of the Enterprise's contractually authorized representative. *E.g.*, *Berezovsky*, 869 F.3d at 933; *Ditech v. SFR*, 2019 WL 6242262, at *2. This Court and the Nevada Supreme Court have held the same. *E.g.*, *Eldorado*, 2019 WL 4120797, at *3-6; *Daisy Tr.*, 445 P.3d at 850-51. Here, Plaintiffs have submitted materially identical evidence to that found sufficient for summary judgment in those cases.

1.   **Fannie Mae's Business Records, Declaration, and Guide**

As explained in the declaration of a Fannie Mae employee, Fannie Mae's acquisition and continued ownership of the Loans listed in Charts 1-3 at the time of the relevant HOA Sales is amply supported by the business records derived from Fannie Mae's electronic systems of record. *See* Ex. C, Miller Decl. ¶ 4-6. Those databases include Fannie Mae's Servicer & Investor Reporting platform ("SIR"), Fannie Mae's eBoutique reporting platform, and the Whole Loan REMIC database. *Id.* Fannie Mae uses those databases and the information contained

therein in the course of its regularly conducted business activity.  *Id.*  The entries in each database are made at or near the time of the events recorded, by or from information transmitted by, persons with knowledge of those events or information.  *Id.*

Fannie Mae's business records show that Fannie Mae owned each of the Loans listed in Charts 1–3 at the time of the HOA Sales.  The records for each loan include the date Fannie Mae purchased the loan, the property address associated with the loan, information reported by the loan servicer(s), and the identity of the loan servicer.  *See, e.g.*, Ex. C, Miller Decl. ¶¶ 9-14 (explaining SIR records for Winter Hill property), ¶¶ 23-30 (explaining Whole Loan REMIC database records for East Hacienda property), ¶¶ 39-45 (explaining eBoutique records for Pinto Rock property).

As discussed *supra* at 6-8, the Fannie Mae Guides confirm that (i) the Guides form a central part of the contractual relationship between the servicers and Fannie Mae; (ii) the servicers are authorized to foreclose on the Loans on behalf of Fannie Mae according to Fannie Mae's guidelines; (iii) Fannie Mae has the right to demand that the servicers record an assignment of the deeds of trust to Fannie Mae; and (iv) regardless of who physically possesses the notes and deeds of trust, those instruments are owned by Fannie Mae.  The Fannie Mae Guides also discuss Fannie Mae's relationship with MERS when MERS serves as a record deed-of-trust beneficiary solely as a nominee for Fannie Mae.  *See supra* at 7.[4]

### 2.    Freddie Mac's Business Records, Declaration, and Guide

As explained in the declaration of a Freddie Mac employee, Freddie Mac's business records and Guide establish the same case-dispositive facts.  Freddie Mac's acquisition and continued ownership of the Loans in Chart 4 is supported by the business-records data derived from the Loan Status Manager and MIDAS systems, which Freddie Mac uses in the course of its

---

[4]    For one of the Properties—1915 Winter Hill Street—the undisputed evidence of Fannie Mae's property interest is apparent in the business records, but also from the publicly recorded documents alone.  Fannie Mae owned the relevant Loan *and* appeared as the record beneficiary of the deed of trust on the date of the HOA Sale.  *See* Ex. G-1 and Ex. C, Miller Decl. at Ex. A1. The Nevada Supreme Court has held that an Enterprise has a property interest under Nevada law where it both owns the loan and appears as beneficiary of record of the deed of trust.  *See Christine View*, 417 P.3d at 366-68.

everyday business to manage and record information about the mortgage loans it owns.  Ex. D, Meyer Decl.  Each record from the MIDAS system for each of its Loans, called the "Loan Basic Inquiry," contains a data-entry field titled "Funding Date" indicating the date upon which Freddie Mac purchased the mortgage loan secured by the real property.  The business records also include the "Loan Status Manager Mortgage Payment History Report," which reflects the mortgage payment history for each property.  Additionally, the "Servicer Number" in the MIDAS "Loan Basic Inquiry" and, where applicable, the Loan Status Manager TOS (Transfer of Service) Summary Report confirms the identity of the loan servicer for each of the Loans.  *See, e.g.*, Ex. D, Meyer Decl.   Freddie Mac's Guide establishes analogous terms governing the Freddie Mac-servicer relationship. *See supra* at 8-9.

### 3. The Ninth Circuit and Nevada Supreme Court Have Held That Materially Similar Evidence Is Sufficient for Summary Judgment

The Ninth Circuit has repeatedly evaluated evidence materially identical to that submitted here—business records, declaration testimony of an Enterprise employee, and Guide provisions—and held that such evidence is "sufficient to obtain summary judgment in … cases applying the Federal Foreclosure Bar." *See Ditech v. SFR*, 2019 WL 6242262, at *2; *see also, e.g.*, *Berezovsky*, 869 F.3d at 933; *Elmer*, 707 F. App'x at 428; *Williston*, 736 F. App'x at 169; *G&P*, 740 F. App'x at 563; *KK Real Estate*, 772 F. App'x 552.

These decisions are grounded in the Federal Rules of Evidence, which provide that business records are, by their nature, admissible to prove the truth of their contents when introduced by a qualified witness, as they are here.  *See Malek v. Fed. Ins. Co.*, 994 F.2d 49, 53 (2d Cir. 1993); Fed. R. Evid. 803 (advisory committee's note to 1972 proposed rules) (noting that business records have "unusual reliability" and include electronic database records). Applying this principle to evidence identical to what is in the record here, *Berezovsky* held that Freddie Mac's business records were admissible and sufficient to support a "valid and enforceable" property interest under Nevada law.  *Berezovsky*, 869 F.3d at 932 & n.8.  In *Elmer*, a case involving a deed of trust naming MERS as record beneficiary, the Ninth Circuit held that a declaration from a Freddie Mac employee and records from Freddie Mac's database were

17

1    "reliable and uncontroverted evidence of its interest in the property on the date of the

2    foreclosure." *Elmer*, 707 F. App'x at 428.

3            And in *Williston*, the Ninth Circuit confirmed that Fannie Mae's business records,

4    employee declarations, and relevant Guide sections are "sufficient" to demonstrate the absence

5    of "genuine issues of material fact regarding whether Fannie Mae and FHFA possessed an

6    interest in the subject property at the time of the HOA foreclosure sale." *Williston*, 2018 WL

7    4178105 at *1.  In its most recent decisions, the Ninth Circuit held that arguments that "[an

8    Enterprise] produced insufficient evidence of a property interest" failed because "[the Enterprise]

9    produced sufficient evidence by providing printouts of its internal database records." *Las Vegas*

10   *Dev. Grp.*, 740 F. App'x at 154; *G&P*, 740 F. App'x at 563 (similar).  These Ninth Circuit

11   decisions also recognize that the Guides confirm that the Enterprises and their loan servicers

12   maintain the type of relationship that preserves a loan owner's secured property interest.  *E.g.*

13   *Berezovsky*, 869 F.3d at 932-33 (citing *In re Montierth*, 354 P.3d 648 (Nev. 2015)).

14           In light of this controlling precedent, this Court and others in this District routinely find

15   such evidence sufficient to establish that the Enterprises owned a loan secured by a deed of trust.

16   *E.g.*, *Thunder Props.*, 2019 WL 6700198, at *4; *Shadow Springs*, 2019 WL 6219525, at *3;

17   *Eldorado*, 2019 WL 4120797, at *3-6; *Resources Group*, 2019 WL 2527559; *Saticoy Bay LLC*

18   *Series 452 Crocus Hill v. Green Tree Servicing, LLC*, No. No. 2:15-cv-00977-RFB, 2019 WL

19   2425669 (D. Nev. Jun. 10, 2019); *Nationstar Mortg. LLC v. Residential Land Corp. of Nev.*,

20   3:17-cv-00324-LRH, 2019 WL 2288434 (D. Nev. May 28, 2019); *Bank of Am., N.A. v. Pueblo at*

21   *Santa Fe Condo. Assoc., Inc.*, 2:16-cv-01199-GMN, 2019 WL 1338385 (D. Nev. Mar. 25, 2019).

22           And to avoid any doubt, the Nevada Supreme Court has consistently relied on the same

23   evidentiary record to rule in favor of the Enterprises and their servicers.  *See, e.g.*, *Daisy Tr.*, 445

24   P.3d at 850-51 (upholding grant of summary judgment to servicer based on similar evidence);

25   *JPMorgan Chase Bank, N.A. v. Guberland LLC-Series 2* (*Guberland II*), No. 73196, 2019 WL

26   2339537, at *1-2 (Nev. May 31, 2019) (unpublished disposition) (holding materially similar

27   evidence admissible and "sufficient to show that Freddie Mac maintained a property interest");

28

1    *CitiMortgage, Inc. v. SFR Invs. Pool 1, LLC*, No. 70237, 2019 WL 289690, at *1 & n.1 (Nev.

2    Jan. 18, 2019) (unpublished disposition) (holding that substantially similar evidence

3    "establish[es] that Fannie Mae owned the loan").

4           As in all those cases, the Enterprise business records and declarations submitted here

5    support the fact that the Enterprises previously acquired and continued to own the Loans at the

6    time of the HOA Sales.

7    **B.      The Enterprises Owned the Notes and Deeds of Trust Related to Each
             Property Under Nevada Law**

8

9           Saticoy Bay likely will argue that the Enterprises did not have a property interest where a

10   servicer or MERS appeared as the record beneficiary of the deed of trust.  This Court has

11   rejected Saticoy Bay's argument in another case.  *See Eldorado*, 2019 WL 4120797, at *4.  That

12   decision was grounded in the Ninth Circuit and Nevada Supreme Court authority that have

13   interpreted Nevada law and confirmed that an Enterprise maintains a property interest when its

14   servicer or its nominee, MERS, appears as record beneficiary of a deed of trust.  *See Berezovsky*,

15   869 F.3d at 932; *FHFA v. SFR*, 2018 WL 3097719, at *9; *Daisy Tr.*, 445 P.3d at 849 (citing *In re

16   Montierth*, 354 P.3d 648 (Nev. 2015)).

17          In *Montierth*, the Nevada Supreme Court adopted the Restatement principle that an

18   investor acquires a property interest in the deed of trust when it purchases a loan and maintains

19   an agent or contractual relationship with the deed of trust record beneficiary.  *See Montierth*, 354

20   P.3d at 651; Restatement § 5.4 cmt. c.  The court applied the Restatement to a situation where

21   MERS, as nominee for the original lender and its successors and assigns, served as record

22   beneficiary of a deed of trust, while Deutsche Bank had acquired the related promissory note

23   from the original lender.  *Id.* at 649.  *Montierth* repeatedly cited to the Restatement, and

24   specifically referenced that section which describes the relationship between investors in

25   mortgages, such as the Enterprises, and their servicers, including that "[i]nstitutional purchasers

26   of loans" will designate a servicer to receive an assignment of the mortgage in order to

27   "facilitate[] actions that the servicer might take, such as releasing the mortgage, at the instruction

28   of the purchaser."  Restatement § 5.4 cmt. c.  The Restatement goes on to confirm that under

19

those circumstances, "*the owner of both the note and mortgage is the investor and not the servicer.*" *Id.* (emphasis added).  The Restatement approach is a recognition of the realities of the mortgage industry:  The Enterprises can more efficiently support the national secondary mortgage market if they can contract with servicers to manage loans without relinquishing ownership of deeds of trust.

The Nevada Supreme Court thus concluded that the relationship between MERS and Deutsche Bank, wherein MERS had authority to foreclose on Deutsche Bank's behalf, ensured that Deutsche Bank remained a "secured creditor" with a "fully-secured, first priority deed" that could be enforced.  354 P.3d at 650-51.  Deutsche Bank, like the Enterprises here, accordingly retained a property interest while another entity was beneficiary of record of the deed of trust.

The Nevada Supreme Court has repeatedly and consistently confirmed that *Montierth*'s holding applies in a case involving materially the same facts and legal issues present in this litigation and in the context of the loan owner-servicer relationship.  In *Daisy Trust*, the Nevada Supreme Court restated *Montierth*'s principle that even if a note and deed of trust are split, "the note nevertheless remains fully secured by the deed of trust when the record deed of trust beneficiary is in an agency relationship with the note holder," and applied *Montierth* to hold that Freddie Mac owned the deed of trust while its servicer was record beneficiary of that instrument. *Daisy Tr.*, 445 P.3d at 849.  The Nevada Supreme Court made clear that "consistent with … *Montierth*, the deed of trust did not have to be 'assigned' or 'conveyed' to Freddie Mac in order for Freddie Mac to own the secured loan."  *Id.*  It has held the same in several subsequent cases. *See*, *e.g.*, *J&K USA, Inc. v. Bank of Am.*, N.A., No. 75555, 2019 WL 4390761, at *1 n.3 (Nev. Sept. 12, 2019) (unpublished disposition) (noting that it logically follows from *Daisy Trust* "that respondent's status as the recorded deed of trust beneficiary does not create a question of material fact" regarding Fannie Mae's loan ownership).

Consistent with those state-court decisions, the Ninth Circuit has applied *Montierth* and correctly concluded that the Enterprises need not be listed as beneficiary of record of a deed of trust to have a protected property interest.  *See Ditech v. SFR*, 2019 WL 6242262, at *1 (noting

20

that in *Daisy Trust* the Nevada Supreme Court "confirmed [the Ninth Circuit's] interpretation of state law.").  In *Berezovsky*, the Ninth Circuit rejected any argument that a loan owner's property interest turns on its name appearing in the public property records:  "[a]lthough the recorded deed of trust omitted [the Enterprise]'s name, [the Enterprise]'s property interest is valid and enforceable under Nevada law" because the Enterprise owned the note and its servicer was record beneficiary of the deed of trust.  869 F.3d at 932.  Indeed, "the absence of the Enterprises' names in the mortgage loans' local recording documents at the time of the HOA sales" does not "undercut the Enterprises' interests."  *FHFA v. SFR*, 893 F.3d at 1149.

The Court should reach the same conclusion here.  When the Enterprises purchased the Loans, they acquired a secured property interest through their ownership of the notes and deeds of trust.  For all but one of the Loans on the Properties,[5] either MERS or a Loan servicer were the record beneficiaries of—but did not own—the deeds of trust.  Their interest derived solely from their relationship with the Enterprise that owned the Loan.  This is true as well for the Mount Noble Property, for which a different entity was actively servicing the Loan at the time of the HOA Sale than that listed as the deed of trust beneficiary, because the Transferor Servicer (MetLife) remained bound by its obligations under the Guide to protect the Loan and comply with Freddie Mac directives regarding the Loan.

As noted above, the Guides and MERS System Rules of Membership confirm that the relationship between the Enterprises and their loan servicers, and between the Enterprises and MERS, are of the kind described in *Montierth* as preserving a loan owner's secured property interest.  *See Berezovsky*, 869 F.3d at 932-33; *Montierth*, 354 P.3d at 651 (looking to whether a loan owner can "compel an assignment of the deed of trust"); *Nationstar Mortg., LLC v. Guberland LLC-Series 3*, No. 70546, 2018 WL 3025919, at *2 (Nev. June 15, 2018) (unpublished disposition) (recognizing Fannie Mae's relationship with its servicers is dictated by the Fannie Mae Guide).

---

[5]  The one outlier is the Winter Hill property, for which Fannie Mae was both the owner of the Loan and record beneficiary of the corresponding Deed of Trust at the time of the HOA Sale.

21

## II. FHFA Did Not Consent to the Extinguishment of the Deeds of Trust

While it is not Plaintiffs' burden to establish this fact, it cannot be disputed that FHFA has not consented to the extinguishment of the Enterprises' property interests. The Federal Foreclosure Bar "cloaks [FHFA] property with Congressional protection unless or until the Agency *affirmatively* relinquishes it." *Berezovsky*, 869 F.3d at 929 (emphasis added); *see also Christine View*, 417 P.3d at 368 (citing *Berezovsky*); *Shadow Springs*, 2019 WL 6219525, at *4 ("[T]he Nevada Supreme Court and the Ninth Circuit have expressly rejected the notion that inaction can be construed as consent."). Accordingly, the statute precluded Saticoy Bay from acquiring free-and-clear title unless it (or another entity) obtained FHFA's affirmative consent to the extinguishment of each lien.

Saticoy Bay cannot show that it or any other entity ever requested, let alone received, such consent. To the contrary, the Conservator has been clear that it "has not consented, and will not consent in the future, to the foreclosure or other extinguishment of any Fannie Mae or Freddie Mac lien or other property interest in connection with HOA foreclosures of super-priority liens." *See* Ex. A. Reviewing the same statement by FHFA and a similar lack of evidence of consent, this Court previously held that "plaintiffs … met their burden to show that they can prove lack of consent at trial," *Shadow Springs*, 2019 WL 6219525, at *4, and that on such a record there could be "no legitimate dispute that the FHFA did not consent," *Eldorado*, 2019 WL 4120797, at *5. The Court should reach the same conclusion here.

## CONCLUSION

Under the Federal Foreclosure Bar, the HOA Sales did not extinguish the Enterprises' interests and therefore did not convey the Properties to Saticoy Bay free and clear of the deeds of trust. Accordingly, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment, and declare that:

- 12 U.S.C. § 4617(j)(3) preempts any Nevada law that otherwise would permit a foreclosure of an HOA lien to extinguish the Enterprises' property interests while they are under FHFA's conservatorship;

- the HOA Sales did not extinguish the Enterprises' interests in the Properties; and

1   • Saticoy Bay does not have an interest in the Properties free and clear of the deeds of trust.

2

3        DATED: January 22, 2020.

4

5   **FENNEMORE CRAIG, P.C.**                 **SNELL & WILMER LLP**

6   By: /s/ Leslie B. Hart          .          By: /s/ Erica Stutman          .
    Leslie Bryan Hart, Esq. (SBN 4932)         Amy F. Sorenson, Esq. (SBN 12495)
    John D. Tennert, Esq. (SBN 11728)          Kelly H. Dove, Esq. (SBN 10569)
7   300 E. Second St., Suite 1510              Erica Stutman, Esq. (SBN 10794)
    Reno, Nevada 89501                         3883 Howard Hughes Parkway, Suite 1100
8   Tel: 775-788-2228   Fax: 775-788-2229      Las Vegas, NV 89169
    lhart@fclaw.com; jtennert@fclaw.com        Tel:  702-784-5200  Fax:  702-784-5252
9   *Attorneys for Plaintiffs Federal Housing*  asorenson@swlaw.com; kdove@swlaw.com;
    *Finance Agency and Federal Home Loan*      estutman@swlaw.com
10  *Mortgage Corporation*                      *Attorneys for Plaintiff Federal National*
                                                *Mortgage Association*
11

12
    15498962
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        23

### CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on January 22, 2020, a true and correct copy of **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,** was transmitted electronically through the Court's e-filing electronic notice system to the attorney(s) associated with this case.  If electronic notice is not indicated through the court's e-filing system, then a true and correct <u>paper</u> copy of the foregoing document was delivered via U.S. Mail.

Roger P. Croteau  croteaulaw@croteaulaw.com

Timothy Rhoda  croteaulaw@croteaulaw.com

    /s/   Pamela Carmon    
An Employee of Fennemore Craig, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT INDEX**

| DESCRIPTION | EXHIBIT |
|---|---|
| FHFA's Statement on HOA Super-Priority Lien Foreclosures (Apr. 21, 2015) | A |
| Charts 1-4 | B |
| Declaration of Felicia Miller | C <br> Part 1: A1-A5 <br> Part 2: A6-A11 <br> Part 3: A12-A16 <br> Part 4: A17-A18 <br>　　　　Exhs. B-D <br> Part 5: Ex. E |
| Declaration of Dean Meyer | D <br> Part 1: 1A-4F <br> Part 2: 5A-8F <br> Part 3: 9A-11F <br> Part 4: 12A-13F |
| Declaration – CitiMortgage, Inc. | E |
| Declaration –Wells Fargo Bank, N.A. | F |
| Fannie Mae Property Records | G-1 – G-21 |
| Freddie Mac Property Records | H-1 – H12 |
| MERS System Rules of Membership | I |
| Declaration of Erica Stutman | J |